IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENEE REESE, on behalf of herself and other persons similarly situated,<br><br>Plaintiff,<br>v.<br><br>ANTHEM INC. and AMERICAN HEART ASSOCIATION, INC.<br><br>Defendants. | CIVIL ACTION NO 17-07940<br><br>JUDGE<br>ELDON E. FALLON<br><br>MAG. JUDGE<br>KAREN WELLS ROBY |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Renee Reese brings this Class Action Complaint and Demand for Jury Trial against the Anthem, Inc., Anthem Blue Cross and Blue Shield Foundation L.L.C. (collectively "Anthem") and the American Heart Association, Inc. ("AHA"). Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. Following a corporate rebranding in 2014, Defendant Anthem sought to aggressively promote and market itself in the United States health insurance consumer market. Consistent with that objective, Anthem contracted with the AHA to promote the Anthem brand though AHA's "awareness campaigns."

2. Specifically, Anthem paid AHA to appear in a variety of web and reality-based advertising positions within AHA's expansive promotional network. This included, among other things, AHA's texting program.

3. AHA hosts a "texting program" whereby users consent to receive "CPR reminders" and other "healthy messaging information" via cell phone text message. What AHA does not tell its texting program users, and what those texting program users never consent to, is that AHA rents out advertising space in each of its text messages to companies, like Anthem, to spread brand awareness of those companies' products and services.

4. In addition to being deceptive, this business model violates multiple tenets of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The TCPA was enacted to protect consumers from unsolicited and unwanted calls, exactly like those alleged in this case. Defendants made these text message calls despite the fact that neither Plaintiff nor the other members of a putative Class of consumers (defined below) provided Defendants with their prior express consent to receive such text messages.

5. By sending spam text messages, Defendants violated the privacy and statutory rights of Plaintiff and the Class and caused them harm, not only by subjecting them to the aggravation that necessarily accompanies the receipt of unsolicited spam text messages, but also because consumers frequently have to pay their wireless providers for the receipt of such unsolicited text message calls.

6. As a result, Plaintiff, on behalf of herself and the putative Class, seeks an injunction requiring Defendants to cease all unlawful text messaging activities alleged in this Complaint, and an award of statutory damages to Plaintiff and the Class for each such violation, together with costs and reasonable attorneys' fees.

**PARTIES**

7. Plaintiff is a natural person and citizen of the state of Louisiana.

8. Defendant Anthem, Inc. is an Indianapolis, Indiana-based, for-profit corporation.

9. Defendant Anthem Blue Cross And Blue Shield Foundation L.L.C. (hereinafter "Anthem Foundation") is an Indianapolis, Indiana-based, non-profit corporation.

10. Defendant AHA is a Dallas, Texas-based, non-profit corporation.

11. Anthem, Inc., Anthem Foundation, and AHA (collectively "Defendants") conduct business throughout the United States.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.*

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

14. Defendant Anthem, Inc. is one of the largest health insurers in the United States.

15. Anthem, Inc. was previously known as WellPoint Incorporated.

16. In 2014, Anthem, Inc. changed its name from WellPoint Incorporated to Anthem Incorporated.

17. With respect to the name change, Anthem Inc.'s CEO stated: "[b]rand is a significant driver of consumer purchasing decisions across our businesses. As we move closer to a consumer-centric marketplace, we believe Anthem is the best brand to lead our company forward to becoming a more consumer capable company…As consumer engagement is heightened we

recognize that brand – an indicator of trust and a predictor of willingness to engage – is going to be of increasing importance."[1]

18. Anthem Inc.'s CEO also said the name change was made to "help [Anthem] better communicate [its] values and simplify the way [it] connect[s] with [its] associates, consumers, investors, and the communities [it] calls home."[2]

19. Following its name change, and continuing to the present, Anthem, Inc. has engaged in an aggressive branding and marketing campaign to disseminate knowledge of its continued existence as a health insurer in United States consumer markets.

20. Anthem, Inc. also works to cultivate a healthful and wholesome image in the public eye. In order to achieve this objective, Anthem, Inc. makes strategic donations to charities. Anthem, Inc. does this mainly through its charitable arm, Defendant Anthem Foundation.

21. Anthem Foundation characterizes itself as "an arm" of Anthem Inc. Anthem Foundation has little to no autonomy relative to Anthem, Inc. and for the purpose of this lawsuit are the same entity.

**Anthem and AHA**

22. Defendant AHA is a well-known provider of heart-health-related information and literature.

---

[1] http://www.healthcarefinancenews.com/news/wellpoint-embraces-anthem-brand (last accessed September 12, 2017).

[2] https://www.forbes.com/sites/brucejapsen/2014/12/03/wellpoint-name-change-to-anthem-official-reflects-brand/#1bf36b51cd54 (last accessed September 12, 2017).

23. AHA has been ranked by media outlets as one of the most "popular" charities, or non-profits, in the United States.

24. AHA's popularity grants it a certain cachet with corporate branding partners willing to donate to the AHA for the benefit of being associated with the AHA brand.

25. As part of its *modus operandi*, AHA promotes "awareness campaigns."

26. In addition to spreading awareness about various heart-health-related subjects, AHA's awareness campaigns provide brand partners valuable exposure to American consumers.

27. The value of AHA's awareness campaigns to branding partners is more than just visibility to American consumers. AHA's awareness campaigns are designed and intended to provide AHA's branding partners with the accompanying goodwill that many Americans associate with the AHA.

28. For instance, AHA has a "Go Red for Women" campaign designed, in part, to spread awareness for women's heart-health issues. Department store Macy's is a branding partner of the "Go Red for Women" campaign. The following is from AHA's website:[3]

[3] https://www.goredforwomen.org (last accessed September 12, 2017).




29. Notably, clicking anywhere in the banner featuring the three smiling women will bring an internet user directly to macys.com. The linked macys.com page makes no reference to the "Go Red for Women" campaign.

30. In essence, AHA's branding partners use AHA to directly advertise their goods and services. Some of AHA's branding partners, including Anthem, would not engage AHA—or "donate" to AHA—if they could not publicize their donation to American consumers and reap the benefit of being publically associated with the AHA.

31. While AHA obtains donations from private individuals for the sake of furthering its heart-health-related causes, AHA also solicits (and is solicited) by major corporations for branding partnership opportunities.

32. As partners of AHA's various awareness campaigns, for-profit companies (or the for-profit parent companies of the charitable subsidiaries who businesses use to engage AHA directly) are provided valuable adverting opportunities.

33. In 2012, the AHA began its "Hands Only CPR" awareness campaign.

34. The premise of the Hands Only CPR campaign is that heart attack victims can be revived via "hands-only" CPR—that is, mouth-to-mouth resuscitation is not necessary to save someone who is suffering a heart attack. The following is from AHA's website, cpr.heart.org:[4]




35. As shown in the image, Anthem's brand figures conspicuously on AHA's webpage. In fact, Anthem's brand appears on nearly every webpage of cpr.heart.org.

36. The fairly simple premise of "hands only" CPR provides AHA with nearly irreproachable justification for incessantly advertising itself—and its branding partners—to the

---

[4] www.cpr.heart.org (last accessed September 12, 2017).

American public. Virtually every message that is shared by AHA with the American public regarding "hands only" CPR is accompanied by some form of corporate advertisement, and especially Anthem's.

37. Under the pretense of "donating" or "helping" AHA's "awareness campaign" Anthem is actually serving the sole purpose of building positive visibility with American consumers and, ultimately, increasing its bottom line.

38. Unfortunately for American consumers, this is done, in part, through a rampant text message campaign that is deceptively implemented by both AHA and Anthem.

**Defendants System for Initiating Calls**

39. AHA obtains consumers cell phone numbers through its website. AHA's website users are offered membership in AHA's "texting program."

40. The ostensible purpose of joining AHA's texting program—per the AHA—is for users to receive "monthly CPR reminders, healthy messaging information, and [for AHA to ask] questions occasionally (e.g. who have you trained in CPR)."

41. The unstated, hidden purpose of AHA's texting program is to offer AHA's branding partners, like Anthem, advertising space in front of American consumers. Yet AHA texting program users are never put on notice that Anthem will be advertising to them while AHA provides its "healthy messaging information."

42. After providing their prior express consent to receive, from AHA alone, "monthly CPR reminders, healthy messaging information, and…questions occasionally (e.g. who have you trained in CPR)" the Plaintiff and the Plaintiff class were each bombarded by dozens of text messages, totaling in the tens of thousands.

43. Many of the text messages were superficial—even vacuous—pieces of medical information. For instance, the Plaintiff received text messages stating: “Memorize your work address. You may need to recite it to a dispatcher if you call 911 from the office,” or “Lightning strike victims can’t electrocute you. Call 9-1-1 and start CPR immediately.”

44. In all, Plaintiff received more than 20 text messages.

45. Each text message began the same way: “AHA/Anthem Foundation:”. Thus, every text message sent by Defendants to the Plaintiff class included a purely commercial “plug” of Anthem Foundation, and by extension, Anthem, Inc.

46. No class member, nor Plaintiff, agreed to receive any advertising or any content whatsoever from Anthem when they enrolled in AHA’s texting program.

47. Not only did Defendants deceive the Plaintiff class relative to the contents of the texting program, Defendants masqueraded Anthem’s advertising campaign as “healthy living advice.”

48. Many class members, including Plaintiff, would give pause to endorsing the Anthem brand or subscribing or viewing promotional content related to Anthem because Anthem has been involved in several high-profile instances of less-than-savory conduct.

49. These instances have included: singling out women with breast cancer, then cancelling their health insurance policies;[5] settling claims with the state of California that it unlawfully cancelled 1,700 of its clients’ policies;[6] suing the state of Maine for the right to raise

[5] https://www.reuters.com/article/us-wellpoint-breastcancer1/corrected-wellpoint-routinely-targets-breast-cancer-patients-idUSTRE63M5D420100423 (last accessed September 12, 2017).

[6] *Id.*

insurance premiums;[7] raising the rates of their insureds by 39% in the state of California, drawing federal and state investigations;[8] and denying coverage for policy-holders who had paid hundreds of thousands of dollars in premiums because they had cancer.[9]

50. Indeed, it is precisely these types of public allegations that Anthem seeks to counteract by partnering with the AHA to "spread awareness" about CPR. These types of allegations also would give consumers pause about supporting Anthem in any way, including receiving its brand messaging via AHA's texting program.

51. Anthem is not the only example of a for-profit business using the cachet of AHA to promote its brand. More locally, Southern University formed a nearly identical branding partnership with AHA. The following is a webpage discovered by Plaintiff's counsel that appears to be the remnants of a similar advertising campaign:

---

[7] http://www.pressherald.com/2017/07/18/anthem-defends-request-for-21-2-rate-hike-for-affordable-care-act-plans/ (last accessed September 12, 2017).

[8] http://articles.latimes.com/2010/feb/09/business/la-fi-anthem-obama9-2010feb09 (last accessed September 12, 2017).

[9] http://sanfrancisco.cbslocal.com/2014/05/28/health-insurance-provider-denies-cancer-treatment-premium-mri-scan-tumor-sonoma-county-man-battling-cancer-denied-coverage-by-anthem-blue-cross-after-paying-100k-in-premiums/ (last accessed September 12, 2017).




52. As the above image indicates, enrollees in AHA's texting program relative to Southern University also received "monthly CPR reminders, healthy messaging information, and…questions occasionally (e.g. who have you trained in CPR)."

53. At least in the case of Southern University, AHA text program users had some idea they would be receiving text messages jointly from Southern as well as AHA—the users were on Southern's website and the text of the webpage explains that the "SU Ag Center teamed up with the American Heart Association."

54. No such representation was made relative to the Plaintiff and the Plaintiff class. At no point during their enrollment in AHA's text program were class members made aware that AHA had "teamed up" with Anthem, let alone that Anthem would be sending text messages.

55. Additionally, Defendants caused commercial text messages to be sent to the Plaintiff and the class where certain text messages contained solicitations to enroll in for-pay CPR courses.

56. Plaintiff and class members received numerous text messages containing hyperlinks to websites whose exclusive purpose was to advertise for-pay CPR courses.

57. Such text messages—nothing more than a suggestion to click a link leading to a website that displayed for-pay CPR courses—were also the type of commercial text messages that Plaintiff and the Plaintiff class never consented to receiving.

58. At no point did any Defendant obtain the prior express written consent of Plaintiff or of any Class member relative to the text messages at issue herein.

**Allegations specific to the Telephone Consumer Protect Act**

59. Given the relatively low cost associated with sending bulk text messages, many businesses have turned to disseminating advertisements or promotions through mass text message campaigns. Seeking to market their services to consumers throughout the United States and, in turn, grow their customer bases, corporations like the Defendants engage in this especially invasive form of advertising.

60. In this case Defendants sent (or directed to be sent on their behalf) unsolicited text messages, without consent, to cellular telephones while using automatic telephone dialing equipment having the capacity to store and dial telephone numbers, *en masse*. As a result, Defendants repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

61. Defendants worked with one another to initiate or cause to be initiated unauthorized text messages to the phones of thousands of consumers across the country.

62. The nature of the text messages sent by Defendants indicate that they used an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendants has the capacity to store, produce, and dial random and sequential numbers, and/or

receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment includes features that are substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

63. Considering that the promotional text message calls alleged herein were exclusively made by Defendants *en masse* to thousands of cellular telephone numbers, necessarily implicates the use of an ATDS.

64. Defendants sent their text messages calls to class members from SMS short code 85886.

65. Defendants sent their text message calls to class members without personally addressing any class member and containing messages that were written in an impersonal manner. Additionally the text message phone calls made by Defendants were artificial and/or prerecorded in the sense that they were created using computer software and then replicated *en masse*.

66. Through its conduct, Defendants caused consumers actual harm by sending unauthorized text message calls. Plaintiff and members of the class were not only subjected to the aggravation that necessarily accompanies the receipt of unauthorized and/or "spam" text messages, but also because consumers frequently have to pay their cell phone service providers for the receipt of such unauthorized text messages.

67. Moreover, Plaintiff and members of the class suffered injuries in the form of invasion of privacy and violations of their statutory rights, the monies paid to receive Defendants' unsolicited text messages, the diminished value and utility of their telephone equipment and telephone subscription service (i.e. the value of such equipment and services is higher when unencumbered by repeated and harassing text messages), the amount of time lost answering and

fielding unwanted telemarketing text messages, the wear and tear on their telephone equipment, the loss of battery (which becomes diminished with each incoming phone call), the loss of battery life (which has a finite number of charging cycles), and electricity costs required to recharge their cellular phones.

68. Furthermore, Defendants made unsolicited and unwanted commercial text message calls to Plaintiff and the class' cellular telephones without their prior express consent.

69. As shown herein, the essence of the text messages sent by Defendants served the purely commercial purpose of expanding and disseminating Defendant Anthem's brand name and existence.

70. Also as shown herein, certain text messages sent by Defendants served the additional purpose of soliciting Plaintiff and class members to enroll in for-pay CPR courses.

71. By sending the commercial text messages to Plaintiffs and members of the Class' cellular telephones without prior express consent, and by send such text messages using an ATDS, Defendants violated 47 U.S.C. § 227.

72. Defendants were and are aware that the above-described text message calls were being made on a widespread basis, and that the text message calls were being made to consumers who had not consented to receive them.

73. As a result of Defendants' unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Class are therefore entitled to, among other things, a minimum of $500 in statutory damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

74. Because Defendants' misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the putative Class.

75. Additionally, as a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A) to ensure that Defendants' violations of the TCPA do not continue into the future.

## CLASS ACTION ALLEGATIONS

76. **Class Definition:** Plaintiff Reese brings this action on behalf of herself and a class defined as follows:

> **Class:** All individuals in the United States who enrolled in AHA's texting program.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

77. **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have sent promotional text messages to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

78. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over

any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether Defendants sent text messages using an automatic telephone dialing system ("ATDS"), as contemplated by the TCPA;

(c) Whether Defendants systematically sent promotional text messages to persons who did not previously provide it with prior express consent to receive such text message calls; and

(d) Whether Plaintiff and the members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

79. **Typicality:** Plaintiffs claims are typical of the claims of other members of the Class in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text message calls.

80. **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have sent promotional text messages to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

81. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the Class members sustained damages as a result of Defendants' conduct and received substantially the same text messages. Plaintiff also has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff

and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

82. **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

83. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION

**Anthem Foundation and Anthem Inc. did not have prior express consent to initiate text message calls to the cellular telephones of Plaintiff and the Plaintiff Class using an ATDS and/or an artificial or prerecorded voice, in violation of 47 U.S.C. § 227(b)(1)(A)(iii), *et seq*. and 47 CFR 64.1200(a)(1)(iii), *et seq*.**

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. Plaintiff and the Plaintiff Class consented to the following as part of AHA's "texting program":

> "By entering your mobile number, you will opt-in to the AHA's texting program. The AHA will send you monthly CPR reminders, healthy messaging information, and ask you questions occasionally (e.g. who you have trained in CPR). You will also be given the option to enroll in an additional text messaging track to receive healthy living tips on healthy eating, active living or high blood pressure."

86. Plaintiff and the Plaintiff Class did not give prior express consent to receive text messages from either Anthem Foundation or Anthem, Inc.

87. Despite a lack of consent, Anthem Foundation and Anthem, Inc. initiated text messages to Plaintiff and the Plaintiff Class in violation of 47 U.S.C. § 227(b)(1)(A)(iii), *et seq*. and 47 CFR 64.1200(a)(1)(iii), *et seq*.

## SECOND CAUSE OF ACTION

**Anthem Foundation and Anthem, Inc. did not have prior express consent to initiate text message calls containing advertisements or telemarketing to the cellular telephones of Plaintiff and the Plaintiff Class using an ATDS and/or an artificial or prerecorded voice, in violation of 47 CFR 64.1200(a)(2), *et seq*.**

88. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

89. Anthem Foundation and Anthem, Inc. initiated advertisements and telemarketing text messages to the cellular telephones of Plaintiff and the Plaintiff class without prior express consent in violation of 47 CFR 64.1200(a)(2), *et seq*.

## THIRD CAUSE OF ACTION

**AHA did not have prior express consent to send Plaintiff and the Plaintiff Class advertisements or telemarketing to their cellular telephones using an ATDS and/or an artificial or prerecorded voice, in violation of 47 CFR 64.1200(a)(2), *et seq*.**

90. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

91. Plaintiff and the Plaintiff Class did not consent to receive advertisements or telemarketing from the AHA related to Anthem.

92. By using an ATDS to send advertisements or telemarketing outside the scope of Plaintiff and the Plaintiff Class' consent the AHA violated 47 CFR 64.1200(a)(2), *et seq*.

## FOURTH CAUSE OF ACTION

**By exceeding the scope of consent, AHA and Anthem did not have prior express consent to send Plaintiff and the Plaintiff Class text messages to their cellular telephones using an ATDS and/or an artificial or prerecorded voice, in violation of 47 U.S.C. § 227(b)(1)(A)(iii), *et seq*. and 47 CFR 64.1200(a)(1)(iii), *et seq*.**

93. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

94. Plaintiff and the Plaintiff class gave their prior express consent to receive from the AHA text messages containing content, in part, regarding "CPR reminders" and "healthy messaging information."

95. AHA and Anthem sent Plaintiff and the Plaintiff Class text messages containing offers to purchase goods and services unrelated to the consent the Plaintiff and the Plaintiff Class gave to the AHA in violation 47 U.S.C. § 227(b)(1)(A)(iii), *et seq*. and 47 CFR 64.1200(a)(1)(iii), *et seq*.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff Renee Reese, individually and on behalf of the Class, prays for the following relief:

(a) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(3), appointing Plaintiff Renee Reese as Class Representative and her attorneys as Class Counsel;

(b) Enter a judgment in favor of Plaintiff and the proposed class for all damages available under the TCPA, including $500.00 per violation and up to $1,500.00 per violation if Defendants willfully violated the TCPA;

(c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

(d) A declaratory judgment that Defendants' telephone calling equipment constitutes an automated telephone dialing system under the TCPA;

(e) A declaratory judgment that Defendants' telephone messages constituted commercial text messages under the TCPA;

(f) An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

(g) An injunction requiring Defendants to cease all unsolicited text message activities, and otherwise protecting the interests of the Class;

(h) Award Plaintiff and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and claims administration; and

(i) Such other and further relief as the Court deems just and proper.

***Respectfully submitted,***

*/s/ William H. Beaumont*
Roberto Luis Costales (#33696)
William H. Beaumont (#33005)
Emily A. Westermeier (#36294)
BEAUMONT COSTALES LLC
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
*rlc@beaumontcostales.com*
*whb@beaumontcostales.com*
*eaw@beaumontcostales.com*