UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RENEE REESE, ON BEHALF OF HERSELF AND OTHER PERSONS SIMILARLY SITUATED | * * * * | CIVIL ACTION |
| | * | NO. 17-07940 |
| VERSUS | * | |
| | * | SECTION L (4) |
| ANTHEM, INC., ET AL. | * * | |

**ORDER AND REASONS**

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") prohibits making automated telephone calls to cellular telephones without the "prior express consent" of the recipient. Plaintiff alleges that Defendants Anthem, Inc., Anthem Foundation, and the American Heart Association ("AHA") violated the TCPA when they sent text messages to Plaintiff and other consumers nationwide. Defendants deny the alleged misconduct, and thus file the instant motion to dismiss. Rec. Doc. 10. Having considered the parties' submissions, arguments, and applicable law, the Court now issues this Order and Reasons.

I.  **BACKGROUND**

This putative class action asserts two causes of action against Defendants Anthem, Inc., Anthem Foundation, and AHA for negligently and willfully violating the Telephone Consumer Protection Act.

Plaintiff alleges that Defendants violated the TCPA by using automatic telephone dialing ("ATDS") equipment (systems designed for mass, automated communications) to send out promotional text messages to thousands of consumers across the country. *See* Rec. Doc. 1 at 3. Plaintiff claims that consumers never expressly consented to receiving these promotional text messages. *Id.* at 4. Plaintiff avers that she was thus harmed by receiving these text messages

1

because these unsolicited text messages violated her privacy, cost her money, diminished the value of her telephone equipment and service, lost her time spent on dodging the text messages, resulted in a loss of battery, and increased her electrical costs. *Id.* at 4-5. Plaintiff seeks to certify an uncertain class of persons who allegedly received similar messages from Defendants.

Plaintiff states that she and other consumers began receiving these unwanted communications after enrolling in the AHA's texting program, which she initially believed to be a plan that would send out healthy reminders, such as information about cardiopulmonary resuscitation ("CPR"). *Id.* at 8. However, Plaintiff alleges that AHA's goal of this texting program is, in disguise, selling advertising space to its branding partners, *e.g.*, Anthem, Inc. and Anthem Foundation. *See id.* Plaintiff asserts that Defendant Anthem Foundation is the charitable subsidiary of Defendant Anthem, Inc., a for-profit health insurance company, and both jointly advertised through AHA's text messages. *Id.* at 4, 8-9. The text messages that Plaintiff received all begin with "AHA/Anthem Foundation." From that heading, Plaintiff suggests that AHA and Anthem Foundation (Anthem's charitable arm) have formed a partnership to devise this advertising scheme. *See id.* Plaintiff further asserts she and other potential class members received dozens of such text messages from Defendants. *Id.* at 5. Plaintiff believes this constitutes sending unsolicited text messages without consent using automatic telephone dialing equipment, and therefore violates the TCPA. *Id.* at 12. Plaintiff also believes that additional text message sent through the program offering for-pay classes in CPR training were a violation of the TCPA. *Id.* at 11-12.

Plaintiff, on behalf of herself and the class, seeks an injunction requiring Defendants to cease sending the text messages, statutory damages for herself and each member of the class, and reasonable costs and attorney's fees. *Id.* at 1. Plaintiff believes she and the class are entitled to a

minimum of $500.00 in statutory damages for each violation under 47 U.S.C. § 227(b)(3)(B). *Id.* at 8. Additionally, Plaintiff believes the Defendants' conduct was willful and knowing, and thus asks that the Court treble the amount of statutory damages pursuant to 47 U.S.C. § 227(b)(3). *Id.* at 9. Plaintiff additionally requests an order certifying the dispute as a class action, appointing her as class representative and her attorneys as class counsel. *Id.*

Defendants have filed the instant motion to dismiss under the Federal Rule of Civil Procedure 12. Defendants proffer four reasons for dismissal. First, Defendants claim that Plaintiff provided them with prior express consent to receive ATDS calls. Second, Defendants affirm that Anthem and Anthem Foundation did not make any ATDS calls to Plaintiff. Third, according to Defendants, the ATDS calls that Ms. Reese received were not "telemarketing." Finally, even if they were telemarketing, AHA and Anthem Inc. argue that they did not need Ms. Reese's express written consent because they are nonprofit entities that require only prior express consent. The Court will address the parties' arguments below.

## II. LEGAL STANDARD

To start with the basics, Rule 8(a) only requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires more than a sheer possibility that the defendant acted unlawfully, and Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although courts must presume that

3

the plaintiff's factual allegations are true, "legal conclusion[s] couched as . . . factual allegation[s]" are not given such deference; a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions." *See id*.

In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Nevertheless, uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). The Court may also consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.  DISCUSSION

### A.  Telephone Consumer Protection Act

Congress passed the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Financial Services, LLC*, 181 L.Ed. 2d 881 (2012). Congress intended "to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs.*, 727 F.3d 265, 268 (3d Cir. 2013). Congress also authorized the Federal Communications Commission to implement rules and regulations enforcing the TCPA. 47 U.S.C. § 227(b)(2). A text message is a call within the meaning of the TCPA.

4

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

The TCPA prohibits the use of any automatic telephone dialing system to call any telephone number assigned to a cellular telephone service, unless for an emergency purpose or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). The TCPA's implementing regulations prohibit anyone from initiating telemarketing calls to cellular phones using an automatic telephone dialing system or an artificial or prerecorded voice without "prior express written consent . . . or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization." 47 C.F.R. § 64.1200(a)(2). "[P]rior express written consent" is defined as a signed, written agreement that clearly authorizes the seller to deliver . . . advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and [specifying] the telephone number to which . . . such . . . messages [are] to be delivered. 47 C.F.R. § 64.1200(f)(8).

In a 1992 rulemaking action implementing the TCPA, the FCC ruled that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 ¶ 31 (1992) (citing H.R.Rep. No. 102–317, at 13 (1991) ("[T]he called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications.")). Federal courts have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided an entity with their telephone number and then received a text message from the entity had no claim under the act. *See, e.g.*, *Blow v. Bijora, Inc.*, 855 F.3d 793, 804-05 (7th Cir. 2017); *Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875, 881 (11th Cir. 2016); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017).

### B. Plaintiff Consented to Receiving Text Messages from AHA.

An individual gives "prior express consent" to be called or texted at the number provided where she has provided her number to the party calling or texting her, and there is some relation between the communications and the reason for which she provided her number. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1308 (11th Cir. 2015). Federal courts have ruled that voluntarily providing one's cellular number constitutes prior express consent. *See, e.g.*, *Blow*, 855 F.3d at 804-05. Moreover, under 47 C.F.R. § 64.1200, the FCC has included exemptions for tax-exempt nonprofit organizations to obtain "express *written* consent." The regulation provides:

> (a) No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) initiate any telephone call (other than a call made . . . with the prior express consent of the called party) using an automatic telephone dialing system . . .
>
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing . . . to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) . . . other than a call made with the prior express written consent of the called party *or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization* . . . .

47 C.F.R. § 64.1200 (emphasis added).

In this case, Plaintiff provided her cellular number to AHA—a nonprofit organization—when she attended a CPR training event. Plaintiff concedes that she submitted her phone number to AHA to receive "monthly CPR reminders, healthy messaging information, and [questions from AHA]." Am. Compl. ¶¶ 42, 46. Therefore, because Plaintiff voluntarily opted for this information, she has provided "prior express consent" to AHA. Despite this acknowledgment, Plaintiff's main contention is that she never consented to receiving text messages from Anthem Foundation—and by Plaintiff's logic and extension, Anthem Inc. However, although the text messages reference

Anthem Foundation, this is irrelevant because the sender was, in fact, AHA. *See* Rec. Doc. 10, Ex. B. Plaintiff has not cited any persuasive cases that says a nonprofit's association with a donor or another charitable entity—i.e., Anthem Foundation—gives rise to a TCPA claim when she voluntarily sought to receive certain communications and information.

The essential issue then is the nature of these text messages and whether they fall into the scope of communication in which Plaintiff voluntarily asked to receive. Defendants have provided the Court with the text messages at issue even though Plaintiff did not attach the substance of the text messages in her Complaint. Nevertheless, the Court can consider them here because the content of the messages is an essential element of a TCPA claim. Moreover, because the Plaintiff specifically refers to the messages—and quotes from some of them—the Court's consideration does not convert this motion into a Rule 56 summary judgment pleading. Although the Court ordinarily may not consider extrinsic evidence on a Rule 12(b)(6) motion, "a district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Chaffe McCall, LLP v. World Trade Center of New Orleans*, 641 F. Supp.2d 585, 595 n.7 (E.D. La. 2009). Here, the Complaint incorporates the messages by reference, and therefore, they may be considered with the instant motion.

  1. <u>The Text Messages Contain Information Sought by Plaintiff.</u>

The Court has reviewed the text messages at issue. Plaintiff consented to receiving communications about, *inter alia*, CPR and healthy living. And that is precisely what she received. For example, one text message states: "AHA/Anthem Foundation: Sometimes victims will take

7

a single breath during CPR. If they take one breath and stop, keep pushing. They still need your help!" Rec. Doc. 10-2 at 2. Another text message reads: "AHA/Anthem Foundation: Rib fractures are often caused by CPR compressions but are easy to heal from. Don't be afraid to push hard and fast on the chest!" *Id*. To be clear, Plaintiff did not receive any information about purchasing insurance or information that may financially benefit Defendants. From this assessment, the Court concludes that Plaintiff consented to receiving the instant text messages from AHA—information about CPR and healthy living.

### 2. The Text Messages are Informational and Not Telemarketing or Commercial.

Under the FCC Rules effective October 16, 2013, "prior express written signed consent" is required only for calls or texts to cell phones that introduce an advertisement, or constitute telemarketing and are sent using an automated telephone dialing system. 27 FCC Rcd 1830, 1831 (Feb. 15, 2012). An "advertisement" is defined by the Code of Federal Regulations as "any material advertising the commercial availability or quality of any property, goods, or services," and "telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(1), (12). Plaintiff argues that she never provided prior written consent to receiving the messages from Defendants.

Plaintiff points to one particular text message containing a shortened clickable link (a Bit.ly), and argues that this message is commercial and not informational. That message states, "AHA/Anthem Foundation: CPR with breaths is important for cardiac emergencies involving infants/kids, drownings, & more. Find a course – [shortened link]." The Court has examined this link in the text message.

8

Upon accessing the shortened link, the Court is taken to AHA's Website containing a resource to find the closest CPR course.



At this point, the Court sees no commercial information. Nonetheless, the Court continues and enters its zip code.



9

After entering the Court's zip code, the AHA Website presents 72 classes "near" the Court.



The first three course providers include ACTS Home Health Care Inc., New Orleans Fire Department, and Holiday Inn – Metairie New Orleans Airport. To sign up for a CPR class—whether for-pay or free—a visitor must click on one of the providers, in which then the Court is taken to the provider's Website. Alternatively, the visitor may initiate a call or email one of the listed contacts.

Federal courts have found that such information do not constitute telemarketing. For instance, in *Smith v. Blue Shield of California Life & Health Insurance Co.*, 228 F. Supp.3d 1056 (C.D. Cal. 2017), the plaintiff sued Blue Shield arguing that calls to her cell number constituted telemarketing prohibited by the TCPA. The court determined that the messages simply provided information about insurance plans and encouragement to seek out further information, and thus concluded they were informational and not commercial. *Id*. at 1066. "Evaluating Blue Shield's call with a measure of common sense, the Court must conclude that the call is not telemarketing or advertisement within the meaning of 47 C.F.R. § 64.1200(f)(1), (12)." *Id.* at 1068; *see also*

*Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851 (N.D. Ill. 2007) (holding that a fax promoting participation in a research study was not an advertisement under the TCPA). Likewise, in this case, common sense tells the Court that the information in which Plaintiff labels as "commercial" is undoubtedly informational. Defendants AHA and Anthem Foundation provide individuals with a public resource to seek CPR training. This resource is the type of communications Plaintiff wanted and signed up to receive: information about CPR and healthy living. Her complaint is thus unwarranted. Accordingly, the Court finds that Plaintiff cannot bring a TCPA claim against Defendants.

IV.  **CONCLUSION**

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Rec. Doc. 10) is hereby **GRANTED**.

New Orleans, Louisiana, this 12th day of March, 2018.

_____
**ELDON E. FALLON**
United States District Judge